**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000518
24-OCT-2016
08:01 AM**

NO. CAAP-15-0000518

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
AMANDA BIRNBAUM, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(CASE NO. 1DTA-15-00158)

MEMORANDUM OPINION
(By: Foley, Presiding J., Leonard and Reifurth, JJ.)

Defendant-Appellant Amanda Birnbaum (**Birnbaum**) appeals from the "Notice of Entry of Judgment and/or Order and Plea/Judgment" (**Judgment**) entered on June 30, 2015 in the District Court of the First Circuit[1] (**district court**). Birnbaum was convicted of operating a vehicle under the influence of an intoxicant in violation of Hawaii Revised Statutes (**HRS**) § 291E-61(a)(1) and (a)(3) (2015 Supp.).[2]

---

[1] The Honorable James S. Kawashima presided.

[2] HRS § 291E-61 provides, in relevant part:

> **§291E-61 Operating a vehicle under the influence of an intoxicant.** (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
>
> (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;
>
> . . . .

(continued...)

On appeal, Birnbaum contends the district court erred by: (1) admitting evidence obtained as a result of a vehicular stop where Plaintiff-Appellee State of Hawai'i (**State**) failed to demonstrate why the vehicle was stopped; (2) admitting evidence obtained as a result of a vehicular stop where the State failed to show that the police complied with Rule 18 of the Rules of the Chief of Police for the Honolulu Police Department and HRS § 291E-19 and HRS § 291E-20 (Repl. 2007); (3) admitting evidence of Birnbaum's "glassy and watery eyes"; (4) admitting evidence of Birnbaum's response to the question "Have you been drinking?"; (5) admitting evidence obtained as a result of a police officer's order to Birnbaum to exit her vehicle; (6) denying Birnbaum's motion for judgment of acquittal; and (7) convicting Birnbaum.

## I. BACKGROUND

On January 14, 2015, the prosecuting attorney for the State filed a charge against Birnbaum, which stated:

> On or about December 21, 2014, in the City and County of Honolulu, State of Hawai'i, AMANDA BIRNBAUM did intentionally, knowingly or recklessly operate or assume actual physical control of a vehicle upon a public way, street, road, or highway while under the influence of alcohol in an amount sufficient to impair her normal mental faculties or ability to care for herself and guard against casualty; and/or did operate or assume actual physical control of a vehicle upon a public way, street, road, or highway with .08 or more grams of alcohol per two hundred ten liters of breath, thereby committing the offense of Operating a Vehicle Under the Influence of an Intoxicant, in violation of [HRS § 291E-61(a)(1) and/or (a)(3)]. AMANDA BIRNBAUM is subject to sentencing in accordance with [HRS § 291E-61(b)(1)] as a first offender.

The district court held a bench trial on May 12, 2015 and June 30, 2015. The State's first witness was Sergeant Noel Tenney (**Sergeant Tenney**) of the Honolulu Police Department (**HPD**). The State also called HPD police officers Edwin Ventura (**Officer Ventura**) and Raynette Bento. Birnbaum objected to the admission of some of the officers' testimony, including testimony regarding Birnbaum's appearance of having "watery, glassy eyes" and testimony regarding Birnbaum's response to the question "Have you

---

[2](...continued)
    (3)    With .08 or more grams of alcohol per two
        hundred ten liters of breath[.]

been drinking?" At the close of the State's case, Birnbaum presented several motions with the purpose of striking "all the evidence obtained in this case as a result of the illegal seizure of [Birnbaum's] person at the roadblock." The district court denied Birnbaum's motions. Birnbaum also submitted an oral motion for judgment of acquittal, which the district court denied.

Birnbaum was the sole witness for her own defense. At the end of trial on June 30, 2015, the district court found Birnbaum guilty and rendered judgment for the State.

Birnbaum filed a notice of appeal from the Judgment on July 11, 2015.

## II. STANDARD OF REVIEW

### A. Admission of Evidence

"Different standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue." State v. Wakisaka, 102 Hawai'i 504, 514, 78 P.3d 317, 327 (2003) (brackets omitted) (quoting Kealoha v. Cty. of Hawai'i, 74 Haw. 308, 319, 844 P.2d 670, 676 (1993)). "A trial court's determination of relevance pursuant to Hawai'i Rules of Evidence [(**HRE**)] Rule 401 (1993) can produce only one correct result, and is therefore reviewable under the right/wrong standard." Wakisaka, 102 Hawai'i at 514, 78 P.3d at 327 (footnote omitted) (citing Kealoha, 74 Haw. at 314-15, 844 P.2d at 674. For the rules of evidence that require a "judgment call" on the part of the trial court, the traditional abuse of discretion standard applies. Wakisaka, 102 Hawai'i at 514, 78 P.3d at 327 (quoting Kealoha, 74 Haw. at 319-20, 844 P.2d at 676).

### B. Constitutional Law on Custodial Interrogations

"We answer questions of constitutional law by exercising our own independent judgment based on the facts of the case[.]" State v. Viglielmo, 105 Hawai'i 197, 203, 95 P.3d 952, 958 (2004) (internal quotation marks omitted) (quoting State v. Kaua, 102 Hawai'i 1, 7, 72 P.3d 473, 479 (2003)). "[Q]uestions

3

of constitutional law are reviewed on appeal under the right/wrong standard." Viglielmo, 105 Hawai'i at 203, 95 P.3d at 958 (internal quotation marks omitted) (quoting Kaua, 102 Hawai'i at 7, 72 P.3d at 479).

## III.  DISCUSSION

### A.  Police Roadblocks

Birnbaum contends the district court improperly admitted evidence obtained as a result of an unlawful search and seizure for a warrantless vehicular stop.

"[S]topping an automobile and detaining its occupants constitutes a 'seizure' within the meaning of the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Hawai'i Constitution, even though the purpose of the stop is limited and the resulting detention quite brief." State v. Eleneki, 106 Hawai'i 177, 180, 102 P.3d 1075, 1078 (2004) (quoting State v. Powell, 61 Haw. 316, 320, 603 P.2d 143, 147 (1979)).  "A warrantless seizure is presumed invalid 'unless and until the prosecution proves that the seizure falls within a well-recognized and narrowly defined exception to the warrant requirement." Eleneki, 106 Hawai'i at 180, 102 P.3d at 1078 (ellipsis omitted) (quoting State v. Prendergast, 103 Hawai'i 451, 454, 83 P.3d 714, 717 (2004)).

A narrow exception to the warrant requirement allows police officers to stop a vehicle if the officer has a "reasonable suspicion" that the person stopped was engaged in criminal conduct.  Eleneki, 106 Hawai'i at 180, 102 P.3d at 1078 (citing Prendergast, 103 Hawai'i at 454, 83 P.3d at 717).  "[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Eleneki, 106 Hawai'i at 180, 102 P.3d at 1078 (quoting Prendergast, 103 Hawai'i at 454, 83 P.3d at 717).

A second exception to the warrant requirement is found at sobriety checkpoints.  The Hawai'i Supreme Court has held that "sobriety checkpoints established at pre-determined sites wherein all vehicles [are] stopped and the drivers examined for signs of

4

intoxication for a brief period" are reasonably "justified on the premise that systematic and non-discriminatory seizures <u>minimally</u> intrude on an individual's privacy." <u>State v. Heapy</u>, 113 Hawai'i 283, 300, 151 P.3d 764, 781 (2007) (plurality opinion) (citing <u>Michigan Dept. of State Police v. Sitz</u>, 496 U.S. 444, 454 (1990)). The Hawai'i legislature "has addressed the need to reduce the intrusiveness of a roadblock by prescribing under HRS chapter 291E, certain procedures in effecting roadblocks." <u>Heapy</u>, 113 Hawai'i at 301, 151 P.3d at 782.

HRS § 291E-19 allows police departments of counties in Hawai'i to "establish and implement intoxicant control roadblock programs in accordance with the minimum standards and guidelines provided in section 291E-20." HRS § 291E-20 provides:

>**§291E-20 Minimum standards for roadblock procedures.**
>(a) Every intoxicant control roadblock program shall:
>
>>(1) Require that all vehicles approaching roadblocks be stopped or that certain vehicles be stopped <u>by selecting vehicles in a specified numerical sequence or pattern</u>;
>>
>>(2) Require that roadblocks be located at fixed locations for a maximum three-hour period;
>>
>>(3) Provide for the following minimum safety precautions at every roadblock;
>>
>>>(A) Proper illumination;
>>>
>>>(B) Off-road or otherwise safe and secure holding areas for vehicles involved in any roadblock stop;
>>>
>>>(C) Uniformed law enforcement officers carrying proper identification;
>>>
>>>(D) Adequate advance warning of the fact and purpose of the roadblocks, either by sign posts, flares, or other alternative methods;
>>>
>>>(E) Termination of roadblocks at the discretion of the law enforcement officer in charge where traffic congestion would otherwise result; and
>>
>>(4) Provide for a sufficient quantity and visibility of uniformed officers and official vehicles to ensure speedy compliance with the purpose of the roadblocks and to move traffic with a minimum of inconvenience.
>
>(b) Nothing in this section shall prohibit the establishment of procedures to make roadblock programs less

intrusive than required by the minimum standards provided in this section.

(Emphasis added.)

### 1. Specified Numerical Sequence or Pattern

Birnbaum first argues that the State failed to prove that the stop was made either as a "reasonable suspicion" stop or as a "predetermined number" stop. The State concedes that Birnbaum was not stopped due to an individualized suspicion of criminal conduct, but that she was stopped as part of a properly conducted sobriety checkpoint.

Sergeant Tenney testified that on December 21, 2014, he was assigned to set up and participate in a sobriety checkpoint. Sergeant Tenney also testified that he determined, based on traffic conditions, that the officers at the checkpoint would stop every fourth vehicle to speak with the driver. Sergeant Tenney also testified that he would flag other vehicles if he saw a violation, including, for example, someone without a seatbelt or an unrestrained child, a car without its headlights on, or a missing license plate.

Birnbaum's argument does not raise sufficient doubt that the police officers failed to comply with HRS § 291E-20. Sergeant Tenney's testimony that every fourth vehicle was stopped and that he stopped Birnbaum is sufficient to imply that Sergeant Tenney stopped Birnbaum as a part of the predetermined sequence. On cross-examination of Officer Ventura, Birnbaum's counsel did not question Officer Ventura about how he determined whether to stop Birnbaum at the roadblock. Birnbaum had the opportunity at trial to attempt to undermine the State's position that the roadblock complied with statutory requirements by questioning Officer Ventura about his decision to stop Birnbaum, but Birnbaum did not do so. Birnbaum's argument on appeal that the roadblock failed to comply with HRS §§ 291E-19 and -20 is without merit.

### 2. Rule 18 of the Rules of the Chief of Police of the HPD

Birnbaum's second argument regarding the reasonableness of the sobriety checkpoint is that the police failed to provide advance warning of the roadblock in violation of Rule 18 of the

6

Rules of the Chief of Police of the HPD.[3] Rule 18, which was adopted on September 19, 1984 states in its entirety:

Rule 18.    ROADBLOCK PROCEDURES

18-1. Either all motor vehicles approaching roadblocks shall be stopped, or certain motor vehicles shall be stopped by selecting motor vehicles in a specified numerical sequence or pattern based on existent traffic conditions, including but not limited to the time of day or night, location of the roadblock and volume of traffic at the roadblock site.

18-2. Roadblocks shall be located at fixed locations for a period of time not to exceed three hours.

18-3. The following safety precautions shall be provided at every roadblock.

a)    Proper illumination by the use of flares, or other illuminating devices;

b)    Off-road or otherwise safe and secure holding areas for vehicles involved in any roadblock stop;

c)    Uniformed police officers carrying proper identification;

d)    Advance warning of the fact of the roadblock, either by reflective sign, flares, or other alternative methods. Advance warning of the fact and purpose of the roadblocks by prior news release;

e)    Termination of roadblocks at the discretion of the police officer in charge where traffic congestion would otherwise result.

18-4. There shall be a minimum of three uniformed police officers wearing reflective traffic vests and at least two official vehicles at each roadblock site.

Birnbaum argues that "[c]ompliance with Rule 18's news release requirement is necessary for compliance with HRS § 291E-19." Birnbaum argues that the State failed to demonstrate that the HPD complied with Rule 18-3(d) by giving adequate "advance warning" of the roadblock "by prior news release."

The State points out that there was adequate advance warning of the fact and purpose of the roadblock. At trial, the State introduced a press release from the HPD dated August 27, 2014. The press release stated that the Honolulu police officers

_____

[3] Birnbaum requests that this court take judicial notice of the Rules of the Chief of Police of the HPD. Under HRE Rule 201 (1993), we may take judicial notice of acts of an executive agency. Heapy, 113 Hawai'i at 304 n.26, 151 P.3d at 785 n.26. Therefore, this court takes judicial notice of Rule 18 of the Rules of the Chief of Police of the HPD.

had been conducting sobriety checkpoints every week from October 2013 to September 2014 as part of a federal sobriety checkpoint program.

The State also requested that the district court take judicial notice of press release dated October 27, 2014.[4] The release states that the HPD "will be setting up impaired driver checkpoints at unannounced times and locations from Saturday, November 1, 2014, through Monday, January 5, 2015."

Sergeant Tenney testified that he received a press release, without specifying which press release, and that his understanding was that when the press releases are issued to officers, they have already been released to the news media. Birnbaum objected to Sergeant Tenney's testimony, and the district court clarified that "it is not going to be considered as evidence of the actual release at this point." Birnbaum later argued that the State had failed to present a witness at trial who could testify that the statements were released to the news media.

While compliance with police guidelines on roadblocks "is germane to the reasonableness of the stop," Heapy, 113 Hawai'i at 304, 151 P.3d at 785, the failure to comply with all of the guidelines on roadblocks does not in itself demonstrate that a stop at the roadblock was unreasonable under article I, section 7 of the Hawai'i Constitution.[5]

---

[4] The State asks this court to take judicial notice of the October 27, 2014 news release, available on the HPD's website. We do not need to take judicial notice of the October 27, 2014 press release because it is part of the record on appeal.

[5] We note that HRS § 219E-19 states,

> The police departments of the respective counties may establish and implement intoxicant control roadblock programs in accordance with the minimum standards and guidelines provided in section 291E-20. The chief of police in any county establishing an intoxicant control roadblock program pursuant to this section shall specify the procedures to be followed in carrying out the program in rules adopted under chapter 91; provided that the procedures shall be in conformity with and not more intrusive than the standards and guidelines described in section 291E-20. In the case of internal police procedures that do not fall within the definition of 'rule' under section 91-1(4) [(2012 Repl.)], failure to comply scrupulously with such internal police procedures shall not invalidate a roadblock that

(continued...)

8

The purpose of establishing legislative and agency guidelines was explained by the majority opinion in Heapy:

> Adherence to these guidelines [contained in HRS §§ 291E-19 and -20] assures that a roadblock seizure is the result of a plan embodying explicit, neutral limitations on the conduct of individual officers. Conducting roadblocks in accordance with such neutral criteria minimizes the risk that the individual's reasonable expectation of privacy will be subject to the discretion of the official in the field. Adherence to the guidelines' requirements also assures that the surprise, fear, and inconvenience to—and therefore the intrusion on—the—motoring public is minimized.

Heapy, 113 Hawai'i at 301-02, 151 P.3d at 782-83 (emphasis and ellipsis omitted) (quoting State v. Fedak, 9 Haw. App. 98, 101-02, 825 P.2d 1068, 1071 (1992)).

Assuming, for the sake of argument, that the HPD failed to adequately warn the public about potential future roadblocks, this failure would have had only a minimal impact on "the risk that an individual's reasonable expectation of privacy will be subject to the discretion of the official in the field." Heapy, 113 Hawai'i at 301-02, 151 P.3d at 782-83. There is no evidence that this roadblock was set up to target Birnbaum, or that the stop was otherwise unreasonable. Birnbaum's argument that the State failed to prove compliance with Rule 18 of the Rules of the Chief of Police of the HPD is without merit.

**B.    "Glassy and Watery Eyes"**

Birnbaum next argues that the district court erred in admitting Officer Ventura's testimony describing Birnbaum as having "watery and glassy" eyes because "whether or not a suspect has 'watery eyes' and/or 'glassy eyes' does not make it more or less probable that the suspect: (1) consumed alcohol; (2) had impaired mental faculties or an impaired ability to guard against casualty; or (3) a prohibited breath or blood alcohol content."

HRE Rule 401 (1993) defines "relevant evidence" as "evidence having any tendency to make the existence of any fact

---

[5](...continued)
        otherwise meets the minimum statutory criteria provided in section 291E-20.

(Emphasis added.) Birnbaum does not argue that the Rules of the Chief of Police of the HPD is a "rule" within the meaning of HRS § 91-1, and because we hold that Birnbaum's argument is otherwise without merit, we decline to address the applicability of HRS § 91-1 to this case.

that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Officer Ventura testified at trial that watery and/or glassy eyes are symptoms that someone who has consumed an alcoholic beverage might exhibit. Officer Ventura's testimony makes it more probable that he suspected Birnbaum had consumed alcoholic beverages, which makes his testimony relevant under HRE Rule 401.

Birnbaum's argument at trial and on appeal that watery, glassy eyes are not scientifically linked to the consumption of alcohol goes to the weight of the evidence rather than its admissibility. Birnbaum's argument is without merit.

## C.    Custodial Interrogation

Birnbaum argues that the police officer who questioned her at the sobriety checkpoint failed to provide a warning as provided in Miranda v. Arizona, 384 U.S. 436 (1966), before the officer asked, "Have you been drinking?" Birnbaum argues that because she was in the holding area of the roadblock, she was in a "custodial interrogation situation" that necessitated a Miranda warning.

"Central to the protection afforded by article I, section 10 [of the Hawai'i Constitution] is the principle that a police officer may not undermine a person's privilege against compelled self-incrimination by subjugating his or her will to that of [the] examining police officer." State v. Loo, 94 Hawai'i 207, 210, 10 P.3d 728, 731 (2000). "Absent Miranda warnings and a valid waiver of them, statements obtained from a person subjected to uncounseled custodial interrogation are inadmissible in a subsequent criminal proceeding brought against that person." Id.

"To determine whether 'interrogation' is 'custodial,' we look at the totality of the circumstances, focusing on 'the place and time of the interrogation, the length of the interrogation, the nature of the questions asked, the conduct of the police, and any other relevant circumstances." Id. (brackets omitted) (quoting State v. Melemai, 64 Haw. 479, 481, 643 P.2d 541, 544 (1982)).

"[A]n individual may very well be 'seized,' within the meaning of article I, section 7 of the Hawai'i Constitution . . . and yet not be 'in custody,' such that he or she was not free to leave,' and yet not be 'in custody,' such that Miranda warnings are required as a precondition to any questioning." Loo, 94 Hawai'i at 211, 10 P.3d at 732 (internal quotation marks and citations omitted) (disagreeing with this court's conclusion that "seizure" and "custody" are synonymous).

> Thus, generally speaking, a person lawfully subjected to a temporary investigative detention by a police officer—who has a reasonable suspicion that is based on specific and articulable facts that criminal activity is afoot, is not subjected to "custodial interrogation" when the officer poses noncoercive questions to the detained person that are designed to confirm or dispel the officer's reasonable suspicion.

Id. (internal citations omitted).

The Hawai'i Supreme Court has held that an officer's questioning at sobriety roadblocks are not custodial interrogations such that Miranda rights are triggered. State v. Wyatt, 67 Haw. 293, 300-01, 687 P.2d 544, 549-50 (1984) (reasoning that "[t]he record . . . does not reflect that the officer may have been motivated by subterfuge or trickery in putting the question [that led to an incriminating response] to [the defendant]"). The supreme court's reasoning reflects that custodial interrogations must be marked by "intimidating or inherently coercive factors usually extant when interrogation is conducted in a custodial setting." Id. at 300, 687 P.2d at 550.

While Birnbaum may have been "seized" while she was questioned at the holding area of a sobriety checkpoint, she was not "in custody" under the Hawai'i Supreme Court's interpretation of article I, section 10 of the Hawai'i Constitution. Birnbaum's rights under Miranda were therefore not violated, and Birnbaum's argument that evidence gathered subsequent to a custodial interrogation was improperly admitted is without merit.

**D.  Ordering a Driver out of a Vehicle**

Birnbaum argues that Officer Ventura improperly ordered her to step out of her vehicle because Officer Ventura did not have a sufficient basis to believe that a crime had been committed.

11

"[A] police officer must have cause before ordering a driver out of a vehicle after a traffic stop." State v. Kim, 68 Haw. 286, 290, 711 P.2d 1291, 1294 (1985) (referring to Wyatt, 67 Haw. at 304 n.9, 687 P.2d at 552 n.9). "[U]nder article I, section 7 of the Hawaii Constitution, a police officer must have at least a reasonable basis of specific articulable facts to believe a crime has been committed to order a driver out of a car after a traffic stop." Kim, 68 Haw. at 290, 711 P.2d at 1294.

Officer Ventura testified that when Birnbaum was stopped at the sobriety checkpoint, he asked Birnbaum if she had been drinking, to which Birnbaum responded yes. Officer Ventura then asked Birnbaum to take a field sobriety test. Officer Ventura testified that the reason he asked Birnbaum to take a field sobriety test was "[b]ecause of her condition and her -- and the smell of alcohol."

Birnbaum's admission that she had consumed alcohol, in addition to Officer Ventura's testimony that he smelled alcohol and that Birnbaum's eyes were watery and glassy at the time of the traffic stop, were sufficiently specific, articulable facts that constituted a reasonable basis for Officer Ventura to suspect that Birnbaum may have consumed more alcohol than she was legally permitted to operate her vehicle. Birnbaum's argument that she was improperly ordered to exit her vehicle is without merit.

**E. Motion for Judgment of Acquittal and Conviction**

Birnbaum argues that the district court erred in denying Birnbaum's motion for judgment of acquittal and in convicting her because the "admissible evidence was insufficient as a matter of law to constitute a prima facie case for the State." Birnbaum makes no other argument than the arguments presented above, which we have deemed are without merit. Having presented no other argument on appeal, we cannot hold that the district court erred in denying Birnbaum's motion for judgment of acquittal or in convicting Birnbaum. See Hawai'i Rules of Appellate Procedure Rule 28(b)(7) ("Points not argued may be deemed waived.").

## IV. CONCLUSION

Therefore, the "Notice of Entry of Judgment and/or Order and Plea/Judgment" entered on June 30, 2015 in the District Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, October 24, 2016.

On the briefs:

Timothy I. Mac Master
for Defendant-Appellant.

Brandon H. Ito
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

13